THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARRY LEE LACEY, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3050

Opinion filed December 21, 1993.

Rita A. Fry, Public Defender, of Chicago (Ira Sheffey, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Margaret M. Regan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Barry Lee Lacey, was charged with first degree murder and robbery. After a jury trial, he was found guilty of both charges and sentenced to natural life in prison for the murder and to seven years' imprisonment for the robbery, the sentences to run concurrently. Defendant appeals the convictions and sentences.

On appeal, defendant argues (1) that the police did not have probable cause to arrest him on February 2, 1989, and (2) that the trial court failed to take into account his rehabilitative potential in sentencing. Thus, defendant contends that he was improperly sentenced to life imprisonment. For the reasons set forth below, we affirm the convictions and sentences.

On February 1, 1989, the victim, Renee Butler, resided at 7416 South Phillips, Chicago, in apartment 209. She had lived there for approximately two weeks. Defendant resided in apartment 208. The two apartments were located directly across from each other on the second floor.

On the evening of February 1, 1989, the victim was in the home of her friend, Martrice Dow, who lived upstairs in the same apartment building, to borrow some clothes she planned to wear later that evening. The victim's niece, Davina Davis, was also present in Dow's apartment. Davis lived in the same apartment building in apartment 401.

At about 9:45 p.m., the victim left Dow's apartment to go back to her own apartment. However, Dow expected the victim to return shortly. When the victim left Dow's apartment, she was wearing a royal blue Dodgers' baseball cap, an orange T-shirt, dark jeans, a gold chain and a gold watch.

Dow went to look for the victim when she failed to return. The victim did not respond when Dow knocked on her door. As Dow turned to go back to her own apartment, she spotted the victim's blue Dodgers' cap in the doorway of defendant's apartment across the hall. She picked up the cap and went back to her own apartment.

Davis left Dow's apartment at about 10 p.m. on February 1, 1989. Upon returning to Dow's apartment, Davis discovered the victim's cap on a chair. After talking with Dow, the two decided to go to apartment 208 to talk to defendant.

Defendant first told Davis and Dow that he had seen the victim with a "tall and fat" man and that the man was wearing a red jacket. This description did not match anyone the women knew. A short while later, Davis and Dow returned to defendant's apartment to question him about the victim's whereabouts. During this second conversation, defendant gave a different description of the man he claimed was with the victim. This time defendant stated that he saw the victim accompanied by a "short" man with a "red and green" Chicago Bulls' jacket. Davis pointed out to the defendant that no Chicago Bulls' jacket existed in the colors "red and green."

The janitor of the building discovered the victim's body the following morning, February 2, 1989, while he was looking out of the window of the second-floor landing. Defendant was arrested a short time later near the intersection of 75th and Phillips on February 2, 1989.

Defendant filed a motion to quash arrest and suppress evidence. At the hearing on the motions, Officer Clifford Evans testified that on February 2, 1989, he was assigned to the 7 a.m. to 3 p.m. shift when he got a call at 9:15 a.m. that a woman had been thrown from a window. When he arrived at the scene, he found the body of a black female lying face down on the ground. He noticed that the body was lying directly below an open window on the second floor of the apartment building at 7416 South Phillips. He subsequently learned that defendant lived in the apartment with the open window. Officer Evans then spoke to Davis, who related the events surrounding the victim's disappearance the previous evening and her conversations with defendant, during which defendant gave her inconsistent descriptions of the man defendant said had accompanied the victim. Davis also told him that defendant lived in 208, directly across from the victim's apartment.

Officer Evans testified that he toured defendant's apartment. He found the apartment door "busted" and the apartment in "disarray." Evans stated that it appeared to him that "foul play" had occurred in the apartment. Upon looking out of the open window located in defendant's bedroom, he saw the victim's body lying directly underneath on the ground below. Evans also testified that he spoke to a man and woman who lived in apartment 210. The couple told him that they had heard screaming the night before coming from defendant's apartment.

Evans was at the scene for approximately one hour before a woman approached him with information regarding defendant's whereabouts. He placed her in his car to search for defendant. The woman spotted defendant walking down the street and pointed out defendant to Officer Evans. Evans asked the woman to exit the vehicle and proceeded to arrest defendant.

The trial court denied the motions to quash the arrest and suppress evidence. Finding that the two motions rested on the validity of the arrest, the trial court determined that under the totality of the circumstances, "a reasonable officer acting on the information that [Officer Evans] had would have done what this officer did." The trial court held, therefore, that the arrest of defendant was valid.

At trial, defendant's confession and the items seized from his apartment were offered into evidence. Detective Michael Pochordo testified that defendant told him defendant murdered the victim by strangling her with a belt in an attempt to rob her of her gold watch and chain. Defendant stated that, on the evening of February 1, 1989, he just had smoked the last of his cocaine and was thinking of how he could get more. He heard the victim entering her apartment and invited her into his apartment to smoke a marijuana cigarette; he was after the victim's jewelry in order to sell it to buy more cocaine. Defendant told Pochordo that the victim resisted when defendant attempted to steal her jewelry. To counter this resistance, defendant grabbed a cloth black belt and began to choke the victim until the victim stopped breathing. As he let the victim's body drop to the floor, he heard a knock at the door. In a panic, he threw the victim's body out of his bedroom window.

Pochordo testified that defendant gave the police oral consent to search his apartment. The police discovered the belt in the bathroom and the victim's gold watch lodged behind a radiator in defendant's living room. The chain was not found.

Assistant State's Attorney David Kelley testified that defendant's confession was later taken down by a court reporter. During the court-reported confession, defendant stated that he strangled the

victim with a belt for 5 or 10 minutes until she "was limp like." Defendant also identified the items retrieved from his apartment as those involved in the murder and robbery. Defendant stated the belt found in his apartment belonged to his fiancee and identified it as the one he used to strangle the victim. He also identified the watch found behind his radiator as the one he took from the victim. The jury found defendant guilty of first degree murder and robbery of the victim.

Defendant argues that the trial court erred in denying the motion to quash the arrest and suppress evidence. A reviewing court will not disturb a trial court's determination on a motion to suppress unless that determination is manifestly erroneous. (*People v. Adams* (1989), 131 Ill. 2d 387, 398, 546 N.E.2d 561.) This court has stated that "[p]robable cause *** exists when the police have knowledge of facts which would lead a reasonable person to believe that the suspect committed a crime." *People v. Hopkins* (1992), 247 Ill. App. 3d 951, 959, 618 N.E.2d 279, 284.

Our supreme court has stated that the arresting officer must make a determination based on an evaluation of all the information available, including the source of that information, that there is probable cause to believe that the individual in question was involved in criminal activity. (*People v. Adams* (1989), 131 Ill. 2d 387, 398, 546 N.E.2d 561.) In *Adams*, the court held that a review as to whether probable cause existed at the time of arrest is not based on hindsight which may be supported by the "fruit of some criminality; rather, the review must center on the information available to the officers preceding the search or arrest." (*Adams*, 131 Ill. 2d at 398.) Thus, the relevant inquiry as to probable cause is whether "a reasonable person in that officer's position believed that a crime was being or had been committed" by the individual in question. *Adams*, 131 Ill. 2d at 398.

■ In the instant case, Officer Evans had probable cause to arrest defendant. He received a call, minutes after the victim's body was discovered, that a woman was possibly thrown out of a window. At the crime scene, he found the victim's body lying face down directly under defendant's open bedroom window. Arriving at defendant's apartment, Evans found defendant's apartment door busted and the apartment itself in "disarray." From the open window in defendant's apartment, Evans had a clear view of the victim's body lying directly underneath the window on the ground below.

Upon interviewing the people on the scene, Officer Evans discovered that defendant had been evasive when answering questions about the victim's whereabouts and had given inconsistent descriptions of the man he supposedly saw accompanying the victim

on the night she disappeared. In addition, defendant's neighbors told Officer Evans that they heard screams coming from defendant's apartment the previous evening. Based on this evidence, we find that the trial court correctly held that from the "totality of the circumstances," Officer Evans had probable cause to arrest defendant.

Defendant next argues that his sentence of natural life imprisonment for first degree murder was excessive in light of the facts presented in mitigation relative to his rehabilitative potential. Defendant contends that the trial court did not consider his rehabilitative potential in imposing the sentence.

■ As a preliminary matter, it should be noted that defendant has waived this issue for our review. Section 5—8—1(c) of the Unified Code of Corrections provides:

"If a motion to reduce a sentence is timely filed within 30 days after the sentence is imposed, the proponent of the motion shall exercise due diligence in seeking a determination on the motion and the court shall thereafter decide such motion within a reasonable time.

If a motion to reduce a sentence is timely filed within 30 days after the sentence is imposed, then for the purposes of perfecting an appeal, a final judgment shall not be considered to have been entered until the motion to reduce a sentence has been decided by order entered by the trial court." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c).

Failure to file a post-trial motion to reduce a sentence "denies the trial court the opportunity to correct any error that might have occurred" and waives subsequent review of that issue in the appellate court. *People v. Macke* (1992), 224 Ill. App. 3d 815, 816, 587 N.E.2d 1113; *People v. Diaz* (1989), 189 Ill. App. 3d 473, 476, 545 N.E.2d 399.

We address the merits of defendant's contention based on the reasons expressed in *People v. Gomez* (1993), 247 Ill. App. 3d 68, 71, 617 N.E.2d 320:

"Mindful, however, of the division within the appellate court on this issue (see *People v. Turner* (1992), 233 Ill. App. 3d 449, 456, 599 N.E.2d 104 (expressly rejecting *Macke* and holding that a motion to reduce sentence is not a necessary precondition to appellate review of that sentence); *People v. Sims* (1992), 233 Ill. App. 3d 471, 473, 599 N.E.2d 137 (same); see also *People v. Hess* (1993), 241 Ill. App. 3d 276, 283[, 609 N.E.2d 371] (recognizing the disagreement among the appellate districts but reaching the merits of the case on the basis of plain error))."

The trial court held the sentencing hearing on October 18, 1990. In aggravation, the State presented two witnesses who testified that, on separate occasions, defendant had sexually assaulted them. One of

the State's witnesses was defendant's second cousin. Defendant was never convicted of any of these offenses.

Defendant presented several facts in mitigation during the sentencing hearing. Defendant, the father of two children, Barry Lacey, Jr., and Elena Lacey, formerly worked for the Illinois Department of Rehabilitation helping senior citizens. Lillisteen Johnson, defendant's girl friend and the mother of Barry Lacey, Jr., characterized defendant as a good father. She also stated that he briefly attended Kennedy-King College.

The trial court found that the facts revealed that defendant had a "Jekyll and Hyde" personality. However, it determined that the facts in mitigation, especially the fact that defendant had no prior criminal convictions, precluded imposition of the death penalty. After reviewing the evidence, the trial court determined that the defendant would be a danger to society should he be released after being confined for a term of years in prison. The court sentenced defendant to natural life imprisonment.

A trial judge's sentencing is afforded great weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A sentence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Perruquet*, 68 Ill. 2d at 154.

Defendant's sentence of natural life imprisonment was not excessive. In determining an appropriate sentence, a defendant's potential for rehabilitation is not entitled to more weight than the seriousness of the offense. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 978, 514 N.E.2d 817.) The trial court here considered all the factors in mitigation and aggravation before imposing the sentence of natural life imprisonment. After considering the evidence and arguments, the trial court found that defendant was eligible for the death penalty since defendant committed first degree murder during the course of committing another felony, in this case, robbery. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) The court, however, declined to impose this penalty finding that the factors in mitigation, especially the fact that defendant had no prior criminal convictions, were sufficient to avoid imposition of the death penalty.

Accordingly, we find that the trial court, whose opportunity to review all factors " 'is superior to that afforded by the cold record in this court' " (*Perruquet*, 68 Ill. 2d at 154, quoting *People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764), did not abuse its discretion in sentencing defendant.

Affirmed.

SCARIANO and DiVITO, JJ., concur.