THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK GOMEZ, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1804

Opinion filed May 25, 1993.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, Susan Schierl, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Frank Gomez was convicted of possession of a stolen motor vehicle and sentenced as a Class X offender to 10 years in the custody of the Department of Corrections. On appeal, he challenges only his sentence, contending that the circuit court improperly considered his prior arrests in aggravation and that the sentence was the result of an improper double enhancement.

The following evidence was adduced at trial. On June 2, 1990, at approximately 5 a.m., Laura Mendez and her sister-in-law, Lillian Castro, arrived at their home at 3637 West Fullerton in Chicago with Mendez's boyfriend, Alberto Torres. As Torres parked the car in the lot behind the building, Mendez saw a "beat up" Buick automobile pull into the driveway and park in the lot. When defendant exited the vehicle and began walking alongside them toward the front of the building, Mendez noticed that he was wearing white shorts, a white sleeveless tee-shirt, and a black pouch around his waist.

After they reached the front of the building, Castro went upstairs, while Mendez and Torres sat in the front hall. A few minutes later, Mendez heard a scream. When she went upstairs to investigate, Castro told her that someone had tried to steal her car from the back lot. Mendez looked out the rear window but saw no one there. She then went to the front of the building, where she saw defendant running across the street. When she checked her car, she found a screwdriver lying on the floor and discovered that the ignition had been damaged. She then went upstairs to her apartment and called the police.

When the police arrived, Mendez told them what had happened and described the man as Hispanic, about 5 feet 9 inches tall, with dark, slicked-back hair, and wearing a white tee-shirt, white shorts, and a black pouch. After speaking with Torres and Castro, the officers proceeded to an area where moments earlier they had seen a person who matched the given description run across the street in front of their parked squad car. Approximately two blocks from where they had seen him earlier, the officers found defendant walking down the street. They handcuffed him, placed him in the back of their car, and returned to Mendez's building, where Mendez, Torres, and Castro each identified him as the person they had seen.

When they inspected the car that defendant had parked in the lot behind the building, the officers found that it had been "completely destroyed." All the seats were removed, and a milk crate had been placed on the floor as a driver's seat. The radio and the ignition were missing, and the dash was ripped apart. The car's exterior was covered with spray paint, and the windows were either broken or rolled down. After the officers checked the license plate number and learned that the car had been stolen, they charged defendant with possession of a stolen vehicle.

As previously indicated, the circuit court found defendant guilty of that charge and sentenced him to 10 years' imprisonment as a Class X offender.

On appeal, defendant contends that the circuit court improperly considered the "bare arrests" which appeared on his criminal history sheet without any proof of underlying criminal conduct. He also contends that his sentence was the result of an impermissible double enhancement. The State maintains that defendant has waived any challenge to the propriety of his sentence because he failed to file a motion to reduce sentence within 30 days after it was imposed pursuant to section 5—8—1(c) of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c).) We agree with the State.

■■ The record reflects that defendant neither objected during the sentencing hearing nor filed a motion to reduce his sentence pursuant to section 5—8—1(c). The failure to file such a motion has been held to constitute a waiver of sentencing issues on appeal because it denies the circuit court the opportunity to correct any error that may have occurred and instead burdens the appellate court with the processing of potentially needless appeals. (*People v. Macke* (1992), 224 Ill. App. 3d 815, 816, 587 N.E.2d 1113; see also *People v. Lewis* (1992), 235 Ill. App. 3d 1003, 1005-06, 602 N.E.2d 492, *appeal granted* (1993), 148 Ill. 2d 649 (applying *Macke* and dismissing the appeal); *People v. Pfister* (1993), 240 Ill. App. 3d 931, 934, 608 N.E.2d 1230 (reaffirming *Macke*).) The *Macke* court recognized that a motion to reduce sentence is the functional equivalent of a post-trial motion which is necessary to preserve issues for appeal. (*Macke*, 224 Ill. App. 3d at 816.) We agree with the *Macke* court and therefore adopt its rationale as our own.

We believe that a rule requiring such a motion does not offend a defendant's rights in any manner and is consistent with the well-established requirement that a contemporaneous objection is necessary to make a proper record concerning alleged error. (See *People v. Williams* (1992), 149 Ill. 2d 467, 493, 599 N.E.2d 913 (holding that any

claimed deficiency or inaccuracy in the presentence report must be brought to the attention of the sentencing court or will be considered waived); *People v. Murray* (1990), 201 Ill. App. 3d 573, 580, 559 N.E.2d 174, *appeal denied* (1990), 135 Ill. 2d 563, 564 N.E.2d 844 (finding waiver where defendant never objected to the court's consideration of death as an aggravating factor in sentencing); *People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1048, 516 N.E.2d 1357, *appeal denied* (1988), 119 Ill. 2d 562, 522 N.E.2d 1249 (holding that the defendant waived the issue of whether the court improperly considered the presence of weapons in aggravation by failing to object at the sentencing hearing).) Furthermore, it is also well established that a written motion is a necessary precondition to the preservation of an issue for appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; see also *People v. Wallace* (1991), 143 Ill. 2d 59, 60-61, 570 N.E.2d 334 (holding that a motion to reconsider is a prerequisite to an appeal of a sentence imposed pursuant to a guilty plea); *People v. Wilk* (1988), 124 Ill. 2d 93, 110, 529 N.E.2d 218 (same).) We believe that a written motion pursuant to section 5—8—1(c) serves the same important goal of promoting "judicial economy and finality of judgments" (*Enoch*, 122 Ill. 2d at 190) by highlighting any alleged error for the circuit court and granting it the "opportunity to [review] the appropriateness of the sentence imposed and to correct [any] errors made." (*Wilk*, 124 Ill. 2d at 110.) In the absence of such a motion, a reviewing court must strain its limited resources combing the record looking for guidance where none may exist. In contrast, requiring a defendant to file such a motion would eliminate much of this needless waste by developing a focused record in the circuit court.

Mindful, however, of the division within the appellate court on this issue (see *People v. Turner* (1992), 233 Ill. App. 3d 449, 456, 599 N.E.2d 104 (expressly rejecting *Macke* and holding that a motion to reduce sentence is not a necessary precondition to appellate review of that sentence); *People v. Sims* (1992), 233 Ill. App. 3d 471, 473, 599 N.E.2d 137 (same); see also *People v. Hess* (1993), 241 Ill. App. 3d 276, 283 (recognizing the disagreement among the appellate districts but reaching the merits of the case on the basis of plain error)), and of the fact that the supreme court has granted leave to appeal in *Lewis*, we address the substance of defendant's contentions.

At the sentencing hearing, the parties first agreed that defendant was eligible for Class X sentencing because he had been convicted of two other Class 2 felonies in the previous three years: a 1987 burglary conviction for which he received 30 months' probation, followed

by a 1988 burglary conviction for which he received four years' imprisonment. The State then argued in aggravation that defendant's "significant number of convictions *** during a relatively short period of time" demonstrates that he has "repeatedly gone out of his way to commit crimes." The State alluded to defendant's criminal record, which included a 1982 theft conviction with 30 months' imprisonment; a 1982 attempted burglary conviction with two years' probation, 10 days' imprisonment, and $100 restitution; a 1983 possession of a stolen vehicle with 30 months' imprisonment; and a 1987 theft conviction with 60 days' imprisonment and $215 in restitution, in addition to the two burglary convictions. The State then requested the court to impose a sentence of 20 years' imprisonment. Defense counsel argued in mitigation that the evidence in the case was closely balanced and that defendant came from a broken family and had many personal difficulties and recommended that the court impose the "absolute minimum" sentence. The court then stated:

"[THE COURT]: I review this presentence investigation and I see that you turned seventeen in *** May of 1981, and I see arrests week to week. I see you placed on probation first in February of 1982, placed on probation February 24, 1982, arrested again. Violation of probation, sent to the penitentiary. Paroled in November of '82. I see arrested in February of '83, March of '83, July of '83, September of '83 sent back to the penitentiary.

How old were you? About eighteen years old, second time to the penitentiary. Sent for three and a half years. You must have just been paroled when you were arrested again in '85. May of '86. January of '87. February of '87. March of '87. On the 3rd you were arrested and sentenced to sixty days. On the 10th of March of '87 you were arrested again for burglary.

That's apparently the case in which at this point, and you were a young man still at that time, Judge Joyce felt if he placed you on probation and gave you an opportunity to have some kind of drug treatment that perhaps you could make some meaning out of your life. And as the presentence investigation so inartfully puts it, you were not able to complete—the treatment was interrupted because you were arrested and taken into custody.

[DEFENDANT]: I was—I was facing a supposedly drug program, but it wasn't. It wasn't what I was looking for. That's where I had the problems adjusting to that type of program.

All those cases were because I had a serious drug problem in those days.

[THE COURT]: Must have been a serious problem. In '88, March of '88, charge of burglary, four years in the penitentiary.

Now my math is not always that great, but it seems to me that when you were arrested in June you must have just gotten out. You're a young man and you have spent most of your life institutionalized.

As the State has argued, we have offered you court services on a number of times in an attempt to say to you something has got to change in your life, but apparently that wasn't enough, and you have been sent to the penitentiary for more than the minimum number of times. Apparently that's not enough. Parole system is not enough.

The only thing that I think is left to be able to protect the citizens of the City of Chicago is to keep you out of the City of Chicago and to keep you in the Department of Corrections. That seems to be the only way that we can protect the people here. I think the question of rehabilitation appears to have been long gone and lost with you.

I'm just—it's really sad to see someone like you, who from the second you became an adult, that's been nothing except lived in and out of the court system and the penitentiary system.

However we're dealing with one charge possession of a stolen motor vehicle, and as I recall the facts in this case the car had been previously stripped and there was very little left of this car, and it was certainly, I'm sure it was a great inconvenience to the owner of the car, but in the great continuum of wrongdoing somehow it seems to me that a twenty year sentence, which would be more typical for a murder case, would not be appropriate.

The legislature is very wise to allow extended sentencing in a case such as this with a background such as this, and certainly this case calls for a range of a Class X sentence, but given all these facts, I'm going to sentence you to ten years in the Illinois Department of Corrections."

■ Defendant first contends that the court improperly considered his "bare arrests" when determining the appropriate sentence. Although arrests not resulting in convictions normally may not be considered in determining the appropriate length of a sentence to be imposed (*People v. Brown* (1982), 103 Ill. App. 3d 306, 310, 431 N.E.2d

43), a sentencing court may consider evidence of criminal conduct for which no prosecution or conviction ensued, provided that evidence is both relevant and reliable. (*People v. Richardson* (1988), 123 Ill. 2d 322, 361, 528 N.E.2d 612, *cert. denied* (1989), 489 U.S. 1100, 103 L. Ed. 2d 943, 109 S. Ct. 1577; *People v. La Pointe* (1981), 88 Ill. 2d 482, 499, 431 N.E.2d 344.) When no supporting evidence is provided to establish its reliability, however, the consideration of a mere arrest constitutes prejudicial error and the sentence will be vacated (*People v. Wallace* (1986), 145 Ill. App. 3d 247, 258, 495 N.E.2d 665; *People v. Thomas* (1983), 111 Ill. App. 3d 451, 454, 444 N.E.2d 288), unless the record demonstrates that the weight placed on the improper factor by the court was insignificant. *People v. Bourke* (1983), 96 Ill. 2d 327, 332-33, 449 N.E.2d 1338 (affirming a sentence even though the sentencing court mentioned "in passing" three improper aggravating factors).

Here, rather than demonstrating reliance on defendant's prior arrests, the record indicates that the circuit court merely mentioned them while considering his criminal history. Although it would have been preferable for the court to affirmatively state that it was not relying on those arrests (see *Richardson*, 123 Ill. 2d at 362 (noting that because the sentencing court "repeatedly emphasized" that it was relying only on those offenses for which the defendant had been convicted, any error in admitting evidence of the other offenses was harmless)), we presume that the circuit court knew the law and applied it correctly. (*People v. Kluxdal* (1991), 225 Ill. App. 3d 217, 223, 586 N.E.2d 701, *appeal denied* (1992), 144 Ill. 2d 639, 591 N.E.2d 27.) For that reason, and because we find no record support to the contrary, we conclude that the length of defendant's sentence was not increased as a result of the court's reliance on mere arrests.

■ Defendant also contends that his sentence was the result of an improper "double enhancement" when the circuit court considered in aggravation the same two convictions that established his eligibility for Class X sentencing. We disagree.

Although there is authority that a sentencing court may not consider in aggravation the same prior convictions that enhance a defendant's offense (*People v. Owens* (1990), 205 Ill. App. 3d 43, 563 N.E.2d 75), that did not occur here. The mere fact that defendant's sentence was enhanced to a Class X status because of recidivism does not automatically entitle him to a near-minimum sentence. (*People v. Harvey* (1987), 162 Ill. App. 3d 468, 475, 515 N.E.2d 337, *appeal denied* (1988), 118 Ill. 2d 547, 520 N.E.2d 389 (noting that the court could impose a more severe sentence on a defendant who had four

prior convictions than on a defendant who had only two).) Here, defendant's sentence was within the Class X range and it was proper because he had four other prior convictions in addition to the two which established his eligibility as a Class X offender. (See *People v. Govan* (1988), 169 Ill. App. 3d 329, 341, 523 N.E.2d 581, *appeal denied* (1988), 122 Ill. 2d 584, 530 N.E.2d 255 (affirming a sentence where the defendant had two other convictions which could be considered by the court).) Because the circuit court could properly rely on the other convictions to determine that a 10-year sentence was appropriate, defendant's sentence plainly was not the result of an impermissible double enhancement.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCORMICK, P.J., and HARTMAN, J., concur.