2020 IL App (2d) 170869-U
No. 2-17-0869
Order filed April 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-2646 |
| DONALD EUGENE ASHFORD JR., | ) ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Identification testimony of a police officer was sufficiently reliable for the jury to convict defendant of aggravated discharge of a firearm per *Biggers* factors. The trial court's denial of defense counsel's motion for a mistrial was not an abuse of discretion. The trial court committed error in failing to adhere to the strictures of Rule 431(b) during *voir dire*, however defendant's claim of first-prong plain error fails due to the overwhelming evidence of his guilt. The trial court improperly relied on uncharged criminal conduct in sentencing defendant to 12 years imprisonment.

¶ 2    After a jury trial, defendant, Donald Ashford, was convicted of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)). He was sentenced to 12 years imprisonment. Defendant appeals, raising questions regarding (1) identification testimony by the arresting officer;

(2) the trial court's failure to admonish several jurors under Rule 431(b); (3) the trial court's denial of defense counsel's motion for a mistrial; and (4) the trial court's consideration of uncharged criminal conduct in aggravation during sentencing.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was arrested on October 11, 2016, and charged by complaint with one count of aggravated discharge of a firearm. Subsequently, a grand jury indicted defendant on one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)). The indictment alleged that defendant knowingly or intentionally discharged a firearm on October 8, 2016, in the direction of Celia Martinez while in her vehicle.

¶ 5      On January 11, 2017, defendant filed a motion for additional discovery requesting information regarding Rockford Police Sergeant Joe Stevens' identification of defendant as the driver of the vehicle involved in the incident leading to defendant's arrest and indictment. The State had alleged that Stevens recognized defendant as the driver due to prior contacts with him. Defendant's motion sought any "records, notes, reports or memoranda" regarding Stevens' prior interactions with defendant. Additionally, defendant sought any "records, notes, reports or memoranda" that Stevens relied upon in forming his identification of defendant as the driver of the vehicle involved in the incident.

¶ 6      On January 20, 2017, the trial court held a pre-trial discovery hearing on defendant's motion. Stevens testified that he had been an officer with the Rockford Police Department for 23 years, six of which were spent with the gang unit. On the day of the alleged incident, Stevens was working overtime as a patrol supervisor but was regularly assigned to the narcotics unit. He stated that he did not remember at what point he became familiar with defendant, but he knew of his place of residence, his name, and members of defendant's family as they were familiar to the

Rockford Police Department. He could not recall any direct contact with defendant while assigned to the gang unit but stated that several shooting incidents occurred at defendant's residence.

¶ 7 Stevens testified that due to his position as a supervising officer, he did not generate reports that document his interactions with defendant. Rather, he assigned cases to subordinate officers and they would share information with Stevens about their ongoing investigations. He testified that defendant's name came up during these conversations. Stevens looked at all types of photographs and social media pages while overseeing cases and said that he had seen defendant in some of these photos. He identified defendant in open court and stated that he looked the same then as on October 8, 2016.

¶ 8 On cross-examination, Stevens testified that he was aware of defendant's name from possible involvement in other gunfire incidents. He could not recall ever meeting defendant. He averred that he knew he had seen many photos of defendant during his career with the Rockford Police Department. He admitted that he has seen photos of defendant's relatives as well and said that some looked like defendant. Stevens reiterated his discussions with subordinate officers about defendant's involvement in other shooting incidents. He could not recall which photographs of defendant he relied upon in making his identification in the incident at issue. Stevens said that he last saw a photo of defendant some months before October 8, 2016. He did not have access to that photo at the time of his testimony. He could not say what type of photo it was that he last saw leading to his identification of defendant.

¶ 9 Both defendant and the State filed a litany of motions in *limine*. Relevant here, defendant's first motion in *limine* sought to disallow Sergeant Stevens from testifying about "prior bad acts" of defendant as such evidence was "unreliable, speculative, irrelevant and prejudicial". Defendant's second motion in *limine* sought to prevent the State from presenting evidence

concerning Rockford Police Officers' assertion that they were looking for the vehicle defendant was driving on October 8, 2016, because it was involved in a shooting incident at Cherry Vale Mall earlier that day. Defendant argued that because he had not been charged with such a crime, any evidence related to it was "unreliable, speculative, irrelevant, and prejudicial." The State's fifth motion in *limine* sought to introduce evidence of defendant's flight from police following the events on October 8, 2016, that led to the instant charge as, the State alleged, it was "relevant and probative regarding consciousness of guilt".

¶ 10    On February 13, 2017, prior to trial, the trial court addressed the motions in *limine*. Regarding the State's fifth motion in *limine*, the State intended to put on the following evidence: There was a shooting outside Cherry Vale Mall on the day of the alleged incident in which defendant was suspect. Officer Stevens responded and observed defendant driving the vehicle, a gold Buick, alleged to have left the scene of the shooting. Stevens, while driving a fully marked police car, saw the defendant driving the gold Buick. After blocking defendant's vehicle in an alleyway, defendant struck Stevens' police car with the gold Buick. Defendant attempted to evade Stevens and a chase ensued through the streets of Rockford. Stevens put on his lights and sirens following defendant's attempt to evade. Stevens lost sight of defendant's vehicle. The State said that Stevens would identify defendant as the driver of the gold Buick on October 8, 2016.

¶ 11    The trial court granted the State's fifth motion in *limine* as to allowing evidence of defendant's flight, but stated

> "When it comes time to the issue of Sergeant Stevens trying to stop the defendant, I wouldn't allow any testimony of why he wanted to stop him, because he was a suspect in a shooting. You're going to have to meet with him and say that he saw a vehicle, he

attempted to make a traffic stop, just a traffic stop ***. And when he puts his lights on *** he's following, he wants to make a traffic stop, then the vehicle flees."

On defendant's first motion in *limine*, as to disallowing Stevens to testify to defendant's "prior bad acts", the trial court granted the motion in part and stated

"I think the identification is only going to be limited to the observation he made when he was following him and he pursued him. I can't allow anything in because that's really prejudice, you know, and it's really not relevant that he knew him before or saw a photograph before because, if he could make an identification and had the opportunity and ability to observe, then that would be sufficient. I think it's really prejudicial if the jury hears something about looking at mugshots and shootings at his house before, He could identify *** you know, he'll be able to testify and [his identification of defendant,] it's a question of fact now."

However, the trial court would allow the State to elicit testimony from Stevens that he was familiar with defendant prior to October 8, 2016. The trial court stated

"[S]o the question will be asked, *** "Were you familiar with [defendant] before October 8th?" Answer: "Yes." And that's it. ***."

The trial court granted defendant's second motion in *limine* seeking to prevent the State from introducing any evidence regarding the Cherry Vale Mall shooting.

¶ 12 The matter then proceeded to jury selection. Relevant here, the trial court engaged in the following exchange with Juror Hauser:

"THE COURT: I'm going to ask you these four questions, if you could respond. [Juror Hauser], *** do you understand and accept the following four principles: No. 1, do you understand that the defendant is presumed innocent of the charge against him?

JUROR HAUSER: Yes.

THE COURT: Do you understand and accept the principle that, before the defendant can be convicted of this offense, the State must prove him guilty beyond a reasonable doubt?

JUROR HAUSER: Yes.

THE COURT: Do you understand and accept the principle that this defendant is not required to present any *** evidence on his own behalf?

JUROR HAUSER: Yes.

THE COURT: And, finally, do you understand and accept the principle that, if this defendant does not testify, you cannot hold it against him?

JUROR HAUSER: Yes.

THE COURT: Do you understand and accept those four principles?

JUROR HAUSER: Yes."

The trial court then engaged in the following exchange with Juror Doherty:

"THE COURT: [Juror Doherty], *** the State has to prove the defendant guilty beyond a reasonable doubt. If they don't prove that to your satisfaction, you understand it's your obligation as a juror to find him not guilty. Do you understand?

JUROR DOHERTY: Yes.

***

THE COURT: Let me just state this also, [Juror Doherty], because I state it in that form. If the defendant you believe is not guilty, you can vote a not guilty verdict; correct?

JUROR DOHERTY: Yes.

THE COURT: Conversely, if the State proves to your satisfaction beyond a reasonable doubt, could you return a verdict of guilty?

JUROR DOHERTY: Yes.

THE COURT: And you won't feel an obligation just because this crime may have been committed in the area where you live that you have to find this defendant guilty of this offense; that has no bearing on it?

JUROR DOHERTY: No."

The trial court then engaged in the following exchange with Jurors Davis and Zentz:

"THE COURT: And I'm going to ask you both these questions, if you could both respond. Let me start with [Juror Davis]. [Juror Davis], do you understand and accept the following four legal principles: No. 1, do you understand that this defendant is presumed innocent of the charge against him?

JUROR DAVIS: Yes, your Honor.

THE COURT: Do you understand and accept the principle that, before this defendant can be convicted of the offense, the State must prove him guilty beyond a reasonable doubt?

JUROR DAVIS: Yes, your honor.

THE COURT: Do you understand and accept the principle that this defendant [is] not required to present any evidence on his own behalf?

JUROR DAVIS: Yes.

THE COURT: And, finally, do you understand and accept the principle that this defendant, if he doesn't testify, you cannot hold it against him?

JUROR DAVIS: Yes, Judge.

THE COURT: Thank you. [Juror Zentz], do you understand and accept the following four principles: No. 1, do you understand that [defendant] here is presumed innocent of this charge?

JUROR ZENTZ: Yes.

THE COURT: Do you understand and accept the principle that, before [defendant] could be found guilty of this offense, the prosecutor must prove him guilty beyond a reasonable doubt?

JUROR ZENTZ: Yes.

THE COURT: Do you understand and accept the proposition, legal principle, that this defendant doesn't have to present any evidence on his own behalf?

JUROR ZENTZ: Yes.

THE COURT: And, finally, do you understand and accept the principle that, if [defendant] does not testify, you cannot hold it against him?

JUROR ZENTZ: Yes."

Following *voir dire*, Jurors Hauser, Doherty, Davis, and Zentz were selected to sit on the jury.

¶ 13     Trial commenced on February 14, 2017. The State called Stevens to testify. Stevens reiterated the testimony he gave during the supplemental discovery hearing regarding his experience as a Rockford Police Officer. He said that he was working on October 8, 2016, as a supervisor on the Patrol Bureau, was dressed in full Rockford police uniform, and was driving a fully marked Ford Expedition police SUV. His duties that day were supervising the patrol officers on the street. He said he was familiar with defendant.

¶ 14     At approximately 4:00 p.m., Stevens attempted to make a traffic stop on a gold Buick driven by defendant. Stevens pulled into an alley behind the 2300 block of Fremont Street in Rockford. As he pulled into the alley, the gold Buick was facing Stevens' vehicle. The gold Buick had Illinois license plates with the number Q177042. The State then introduced People's Exhibits

1 and 2. Stevens recognized the exhibits as photographs of the gold Buick he attempted to stop on October 8. The exhibits were entered into evidence without objection.

¶ 15    Stevens testified that his SUV was about four to five feet away from the front of the gold Buick in the alleyway when he observed defendant driving it. He stated that his view was clear and unobstructed. Defendant, wearing a white shirt and baseball hat, was the only person Stevens saw in the gold Buick. He had his overhead red and blue lights on indicating that he wanted defendant to pull over. Defendant drove toward Stevens' SUV, appearing to try to maneuver around it. The alleyway was too narrow, so defendant reversed the gold Buick northbound towards Fulton Street. Stevens then activated his siren and pursued defendant's vehicle as it backed onto Fulton Street. Stevens pulled in front of defendant and their vehicles collided. Stevens put his vehicle in park and exited to attempt to place defendant in custody. Stevens' SUV was elevated higher than defendant's, allowing him to see down into the gold Buick. Defendant was in the driver's seat and, Stevens testified, it appeared as though he was reaching for something. Stevens then drew his firearm. Defendant put the gold Buick in reverse and drove around Stevens' SUV and headed east on Fulton Street. He stated that he had no doubt that defendant was the person he observed driving the gold Buick on October 8, 2016.

¶ 16    After defendant headed east on Fulton Street, Stevens got back into his vehicle and continued in pursuit. The entire pursuit took place in a residential area with a speed limit 30 miles per hour; a rate which, Stevens stated, defendant traveled in excess throughout the incident. Stevens was able to stay within several car lengths of defendant as the travelled through the area, but eventually lost sight of him and never saw the defendant's vehicle again. Stevens then identified defendant in open court as the person he observed driving the gold Buick on October 8, 2016.

¶ 17    On cross-examination, Stevens admitted that he had never met defendant in person before October 8. He did not conduct any photo lineup or comparison with other individuals arrested with defendant on October 11, 2016, because he knew defendant was the driver of the gold Buick based on photos he had seen in the past. He stated that less than a minute elapsed between first encountering the gold Buick and the collision of the two vehicles leading to the high-speed pursuit.

¶ 18    On redirect, Stevens testified that he did not ask for a photo lineup to be put together for himself because Rockford police do not conduct such lineups when they are "confident who they saw, where they saw them, what they were doing" as it is "unnecessary".

¶ 19    The State called Celia Martinez to testify. Martinez testified that she was driving her Nissan Altima eastbound on State Street with her cousin on the afternoon of October 8, 2016. As she was proceeding though the intersection at Mulford and State Street, she observed a gold Buick travelling south on Mulford at fast speed coming toward her car. She stated that she had the green light and it looked as though the gold Buick was going to run through the red light on Mulford. She attempted to avoid the gold Buick, but it struck the rear bumper on her vehicle's right side. She testified that the driver of the car was a black male. After striking her car, the driver of the gold Buick put his hand up as if to indicate "Oh, I'm sorry" or "My bad" or "It happens". Aside from observing that the driver was a black male, she was unable to identify the person who hit her.

¶ 20    The gold Buick then proceeded to drive off, so Martinez followed it. She told her cousin, the passenger in her car, to record the gold Buick with her phone. The State then introduced People's Exhibit 45, the video recorded from Martinez's phone, which was admitted without objection. The video depicts a gold Buick with Illinois license plate number Q177042. Martinez confirmed that the gold Buick in the video was the same one that hit her car on October 8, 2016. She stated that she stopped filming shortly after starting in order to call 911 to report the accident,

as she had already recorded the vehicle's license plate. Martinez's was following behind and to the right of the gold Buick.

¶ 21    Just after hanging up with the 911 operator, Martinez heard a gunshot. She believed the driver of the gold Buick had fired at her. She turned right to "just try to get out of the way *** just tried to get out of there." After hearing the shot, Martinez said that she observed the gold Buick's back passenger side window shattered and glass on the pavement. Right before she heard the shot, she said she observed the driver of the gold Buick "throwing stuff in the car". She stated that she observed the driver with his arm extended behind him, leaning over his seat. Then she heard the loud bang she indicated was a gunshot. She never actually saw a firearm in the gold Buick.

¶ 22    On cross-examination, Martinez stated that the driver of the gold Buick was on his phone just before colliding with her car. After the collision, when the driver put his hands up, Martinez observed that the driver had nothing in his hands.

¶ 23    The State called Detective Dwayne Beets of the Rockford Police Department to testify. Beets had been employed with the Rockford Police Department for 22 years and was, at the time of trial, assigned to the detective bureau in the narcotics unit. At approximately 11:50 p.m. on October 10, 2016, Beets was called to respond to a residence located at 536 Kennon Road in Rockford to assist in the execution of a search warrant. While searching the residence, Beets was searching in the attic and, while feeling along the edge of the attic, felt something he believed was the barrel of a handgun. Beets testified that a Detective Spencer Berke from the identification unit arrived later to collect the gun. The State then asked Beets if "[b]efore you had responded to assist with the search warrant, were you given any information as to why you were there?" Beets responded that he was "[p]rovided information that there may be suspects that were involved in possibly *** another investigation." Defense counsel objected, requesting that the exchange be

stricken based on a violation of defendant's motion in *limine*. The trial court overruled the objection.

¶ 24    The State called Officer Christopher Jones of the Rockford Police Department to testify. Jones had been employed by the Rockford Police Department for 12 years and, at the time trial, was assigned to the SCOPE unit. Jones' duties as a member of the SCOPE unit were to conduct investigations related to drugs, guns, and gangs. At 2:30 p.m. on October 10, 2016, Jones was called to a residence at 4581 Trevor Circle in Rockford. Jones testified that he observed a gold 2001 Buick LeSabre at the residence. The State introduced People's Exhibits 1, a photograph of the gold Buick with Illinois license plate Q177042, taken at the Trevor Circle residence by Jones; and People's 2, a photograph of a .40 caliber shell casing on the back floor of the gold Buick, also taken by Jones at the Trevor Circle residence.

¶ 25    Jones then testified as to the way he collected, photographed, and preserved the shell casing before giving it over to the Rockford Police Department's property and evidence division. He then recounted going to the residence at 536 Kennon Road at approximately 8:30 p.m. on October 10, 2016. He went to the residence on information that defendant was there. Jones stated that defendant was indeed at the Kennon Road residence and was taken into custody that evening. The State then asked Jones if "prior to October 10, 2016, were you familiar with who [defendant] was?" Jones responded "[v]ery much so." After cross-examination, redirect examination, and re-cross examination, Jones was dismissed.

¶ 26    As the State was about to call its next witness, defense counsel requested a sidebar. Defense counsel addressed the State's question to Jones about his familiarity with defendant and Jones' subsequent answer. He recognized his failure to object at the time of the exchange but asked for a mistrial because

"[W]hat the jury is hearing is that *** [defendant] apparently has all sorts of contacts with the police, so much so that Officer Jones is very much so aware of who he is, and I don't think it's appropriate for that sort of question to be asked, especially since he's not there to testify - - he's not like Officer Stevens where his identification of [defendant] is important. I mean, this is a guy who's just a cop who found a shell casing and might - - didn't even see [defendant] *** when he was arrested, but somehow they get out that he's very much so aware of who [defendant] is? I mean, that's not right."

The trial court responded to defense counsel's request for mistrial by stating

"I would state, first of all, that witness never identified the defendant in open court. He made reference to him and he made reference to "very much so." Now, the officer, so it's clear on the record, didn't go into any great detail what "very much so" [meant], but I understand what you argue.

***

So, I understand the nature of your motion for mistrial. I don't believe his comment *** rises to the level where I would grant a mistrial. *** Your motion for mistrial is heard and denied."

When the trial reconvened, Officer Jones was recalled by the State to identify defendant in open court, which he did. The State then began its direct examination of Officer Spencer Berke.

¶ 27    Officer Berke testified that he worked for the Rockford Police Department as a member of the crime scene unit. He recalled being dispatched to 536 Kennon Road at approximately 12:00 a.m. on October 11, 2016, to collect evidence based on a search warrant. Specifically, Berke was at the residence to collect a firearm. He collected a .40 caliber Hi-Point model JCP semiautomatic firearm. He identified six live rounds recovered from the firearm, with two missing that were used

for tests. Berke stated that he collected DNA and searched the firearm for fingerprints. He found no latent fingerprints on the firearm. He stated that he did not attempt to find fingerprints or DNA from the bullets recovered at the Kennon Road residence.

¶ 28    The State called Christina Davison, an employee of the Illinois State Police at the Rockford Forensic Science Laboratory, to testify as an expert in the area of firearms identification. Davison tested the .40 caliber shell casing taken from the back of the gold Buick with test-fired bullets from the firearm recovered from the Kennon Road residence. She determined that the shell casing from the gold Buick was fired from the same gun as the one discovered at the Kennon Road residence.

¶ 29    At the close of the State's evidence, defendant moved for directed verdict. The trial court denied defendant's motion. The jury found defendant guilty of aggravated discharge of a firearm.

¶ 30    On May 31, 2017, defendant filed an amended motion for judgment notwithstanding the verdict or alternatively for new trial. Relevant here, defendant alleged that the trial court erred in not granting a mistrial after the State violated his first motion in limine when Officer Jones was asked if he knew defendant; to which Jones responded, "very much so." Additionally, defendant alleged that the State did not prove him guilty beyond a reasonable doubt. On September 26, 2017, the trial court denied defendant's motion and the matter proceeded to sentencing.

¶ 31    Defendant's conviction for aggravated discharge of a firearm, a Class 1 felony, carries a sentencing range of four to 15 years in prison. The State asked the trial court to sentence defendant to the maximum term. Defendant's counsel asked the trial court to sentence defendant to the minimum term. The trial court postponed its determination of defendant's sentence to the following day because, as the trial court stated

> "I don't want to rush this. I would state, it would give me the night to think about this, which sometimes I need to do because [defendant's] looking at a minimum of 4 to 15,

no probation, and it's 85% sentence. I'll keep the file. See you tomorrow. I don't want to rush through this ***."

¶ 32    On September 27, 2017, the trial court announced that it was ready to impose sentence. After stating that it had considered the presentence report (PSI), the letters written by defendant's family and friends in mitigation, and defendant's upbringing and family life, the trial court recounted the facts of the present case in aggravation and stated

"Sergeant Joseph Stevens was made aware of a shooting that occurred at 3:20 pm. And I make note here that you're not charged with shooting at any other location, but that shooting occurred at Cherry Vale Mall and that shooting involved a car, a gold Buick with registration of Q177042.

***

I do believe the court can make the reasonable inference that either you or someone who may have been with you may have been involved in some type of shooting at Cherry Vale Mall a short time earlier."

The court then continued to recount the facts of the present case. When discussing the testimony of Celia Martinez, the trial court noted

"[W]hile she didn't identify you, she was following you to take a photograph of your vehicle so she can get the registration number, she actually did that, and I do believe it was presented before the jury. And the license number was Q177042, the same vehicle that Sergeant saw and the same one that perhaps was involved in the incident at Cherry Vale Mall. Nobody else was in your vehicle."

The trial court sentenced defendant to 12 years imprisonment.

¶ 33    On September 29, 2017, defendant filed a motion for reconsideration of sentence alleging that the trial court "improperly considered items from the [PSI] for which there was no evidentiary basis." Specifically, defendant alleged that the trial court's sentence suggested that it concluded defendant was responsible for the shooting at Cherry Vale Mall. At the time of the sentencing hearing, defendant had not been charged with any crime related to that shooting.

¶ 34    On October 19, 2017, a hearing was held on defendant's motion. The trial court said that it relied strictly on information contained within the presentence report. The PSI read as follows regarding the Cherry Vale Mall shooting:

> "On October 8, 2016, at approximately 3:20 p.m. *** Rockford Police Department Sgt. Joseph Stevens was made aware that a shooting was reported at Cherry Vale Mall, and that an unknown black male was the shooter, and was in a gold Buick with registration of Q177402 ***."

The trial court said that it made the "reasonable inference that defendant may have been involved" in the Cherry Vale Mall shooting earlier in they day on October 8, 2016. It was part of the trial court's consideration in sentencing defendant. Defendant's motion for reconsideration of sentence was denied.

¶ 35    Defendant then filed this timely appeal.

¶ 36                                    II. ANALYSIS

¶ 37    Defendant raises several contentions in this appeal. He contends that (1) the State failed to prove him guilty beyond a reasonable doubt because Sergeant Stevens' identification testimony was dubious; (2) the trial court erred in not granting defense counsel's motion for a mistrial following Officer Jones' testimony; (3) the trial court failed to properly admonish four of the jurors under Rule 431(b), thus denying him a fair trial as the evidence was closely contested; and (4) he

is entitled to a new sentencing hearing because the trial court improperly considered uncharged criminal conduct in aggravation. We will address each contention in turn.

¶ 38     We begin with defendant's contention that Stevens' identification was insufficient to support a conviction. He argues that Stevens' identification testimony was unreliable under the factors articulated in *Neil v. Biggers*, 409 U.S. 188 (1972). Additionally, defendant argues that circumstances of Stevens' identification would make his testimony unreliable under the factors articulated in *People v. Lerma*, 2016 IL 118496.

¶ 39     Due process requires that the State prove beyond a reasonable doubt every element of the offense charged, including "the identity of the person who committed the crime." *People v. Rodriguez*, 312 Ill. App. 3d 920, 933 (2000); U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. An identification will not be deemed sufficient to support a conviction if it is vague or doubtful. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Slim*, 127 Ill. 2d at 307. Ultimately, the reliability of a witness' identification testimony is a question for the trier of fact. *In re Keith C.*, 378 Ill. App. 3d 252, 258 (2007).

¶ 40     In assessing identification testimony, our courts have generally been using steps set out by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972). There the Court held that circumstances to be considered in evaluating an identification include: (1) the opportunity the witness had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Slim*, at 307-08. Illinois Pattern Jury Instructions, Criminal, No. 3.15 (hereinafter

IPI Criminal 3.15), instructs jurors, when weighing identification testimony of a witness, to consider "all the facts and circumstances in evidence, including, but not limited to, the five *Biggers* factors.

¶ 41    The relevant inquiry for reasonable doubt purposes is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Piatkowski, 225 Ill. 2d 551, 566 (2007). A positive identification by a single eyewitness who had ample opportunity to observe is sufficient to support a conviction. *Id*.

¶ 42    Defendant argues that only a single Biggers factor weighs in the State's favor regarding Stevens' identification testimony; Stevens' certainty of his identification of defendant, which, therefore, was not sufficient to support his conviction. We disagree.

¶ 43    Stevens testified at trial that after attempting to initiate a traffic stop of defendant, he pulled into the alleyway facing the gold Buick. He stated that his vehicle was within 4-5 feet of the gold Buick. He made eye contact with the driver when the gold Buick started to attempt to maneuver around Stevens' vehicle. He recalled defendant as the lone occupant of the gold Buick and was wearing a white shirt and baseball cap. When the gold Buick collided with Stevens' SUV after attempting to flee, Stevens' testified that he exited his vehicle and looked down from approximately 10 feet away, unobstructed, into the gold Buick and observed defendant as the driver. He was familiar with defendant's appearance from prior observation of investigative photographs. Based on this identification testimony, the jury could reasonably conclude that Stevens' opportunity to view defendant at the time of the offense weighed in the State's favor.

¶ 44    The testimony recounted above likewise supports finding that the jury reasonably concluded that Stevens' degree of attention to defendant at the time of the offense weighed in the

State's favor. Nothing in Stevens' testimony suggested that his attention was ever distracted from focus on defendant until he took cover behind the driver's door of his police vehicle after believing defendant may have been reaching for a firearm. As defendant points out in his brief, Stevens' testimony would have no bearing on *Biggers* factors "(3)" and "(5)" above (supra ¶ 40), as he never identified defendant in a lineup or show up after the offense; nor did Stevens describe defendant as the driver after the offense, thereby limiting the jury's consideration of the *Biggers* factors per IPI Criminal 3.15 to "(1)", "(2)", and "(4)" above (supra ¶ 40). As defendant concedes, Stevens testified that he was certain of his identification of defendant as the driver of the gold Buick, thus rendering factor "(4)" in the State's favor. Based on the eyewitness identification testimony given by Stevens at trial, the jury concluding that defendant was the driver of the gold Buick was entirely reasonable and sufficient to support defendant's conviction.

¶ 45    Defendant next contends that the trial court erred in not granting defense counsel's motion for a mistrial following Officer Jones' testimony. He argues that the State asking Officer Jones if he was "familiar with the defendant before the incident" denied him a fair trial as the question held no relevance other than to elicit Jones' answer, "very much so". Defendant avers that this exchange suggested to the jury that defendant had a "notorious reputation" with the Rockford Police Department. Additionally, defendant claims that the State violated his first motion in *limine* barring the State from referencing defendants "prior bad acts".

¶ 46    A violation of a ruling on a motion *in limine* will constitute grounds for a mistrial "only when the violation effectively deprived the defendant of his right to a fair trial." *People v. Phillips,* 383 Ill. App. 3d 521, 547 (2008). "To prevail on appeal, [the] defendant must establish that there was a manifest necessity for the mistrial or that the ends of justice would be defeated by continuance of the trial; that is, that the jury was so influenced and prejudiced that it would not, or

could not, be fair and impartial, and the damaging effect of the evidence could not be remedied by admonitions or instructions." *Id.* at 339-40. "An improper remark will not result in reversal unless it appears that the guilty finding was the result of the error." *People v. Brooks*, 172 Ill. App. 3d 417, 422 (1988). "A prompt objection, sustaining of the objection, and instruction to disregard the testimony generally cures any potential prejudice." *Id.* This court must consider the trial as a whole in determining whether a new trial is necessary. *Id.* "The decision to declare a mistrial rests within the discretion of the trial court and will not be disturbed on review unless there has been an abuse of discretion." *People v. Wills*, 153 Ill. App. 3d 328, 339 (1987).

¶ 47    "A criminal defendant, whether guilty or innocent, is entitled to a fair, orderly, and impartial trial" conducted according to law.  *People v. Blue*, 189 Ill. 2d 99, 138 (2000). This due process right is guaranteed by the federal and state constitutions. *Blue*, 189 Ill. 2d at 138; U.S. Const., amend. XIV, § 1; Ill. Const.1970, art. I, § 2. "The rule generally barring other-crimes evidence is based on the belief that the introduction of the evidence may over-persuade a jury to convict a defendant only because the jury believes the defendant is a bad person deserving punishment." *People v. Nash*, 2013 IL App (1st) 113366, ¶ 24.

¶ 48    It is well established under Illinois law that evidence of other crimes is not admissible to show a defendant's propensity or disposition to commit crimes. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003); Evid. Rule 404(b) (West 2016). Testimony concerning an officer's prior acquaintance with a defendant, even if not introduced as evidence of a criminal history, such an implication may be conveyed by testimony of this nature, and therefore "is better avoided, unless somehow relevant." *People v. Bryant*, 113 Ill. 2d 497, 514 (1986); citing *People v. Stover*, 89 Ill. 2d 189 (1982).

¶ 49 Defendant cites *People v. Stover*, 89 Ill. 2d 189 (1982), to support his argument that the State's elicitation of Jones' testimony implying defendant's prior contact with the Rockford Police, in violation of his first motion in *limine*, compelled the trial court to grant his motion for a mistrial. In *Stover*, the defendant was convicted by the trial court of resisting and obstructing a peace officer. *Stover*, 89 Ill. 2d at 191-92. One of the arresting officers was called to establish the defendant's knowledge that he and the other arresting officers were indeed police officers when the defendant allegedly resisted arrest. *Id*. at 192. The officer described his attire on the day of the incident, presented a badge to identify himself, and detailed items on his equipment belt. *Id*. At the conclusion of the officer's direct examination testimony, the State asked him whether he had been acquainted with the defendant prior to the alleged incident. *Id*. at 192-93. Defense counsel objected and was overruled, followed by the officer's affirmative response to the question. *Id*. at 193.

¶ 50 Although the defendant's conviction in *Stover* was reversed and remanded for new trial on a separate issue, our supreme court noted that

> "[E]vidence that the arresting officer was previously acquainted with defendant does not necessarily imply a criminal record. However, under the circumstances of this case, there is no apparent reason why the prosecutor would inquire into defendant's previous acquaintance with [the officer] unless an implication of prior criminal activity was intended." *Id*. at 196.

As the defendant's knowledge (an essential element of the offense charged) that the arresting officers were police officers had already been established by the testimony, there was "no apparent reason why the prosecutor would inquire into defendant's previous acquaintance with [the officer] unless an implication of prior criminal activity was intended." *Id*. The supreme court instructed the trial court to not allow this improper question at retrial. *Id*.

¶ 51    We agree with defendant in the present case that the State's question and Jones' answer as to his familiarity with defendant was improper and in violation of his motion in *limine*. Jones was called to testify about the shell casing found in the gold Buick at the Trevor Circle residence. He was not called to identify defendant as the perpetrator. The question and answer were irrelevant. However, examining the trial as a whole, we cannot agree with defendant that the improper remark was so influential or prejudicial that it appears the jury's guilty verdict was the result of the error.

¶ 52    In *Blakely*, the defendant was cross-examined by the State with questions in which "the only real purpose *** was to convey to the jury the impression that defendant was well known by police officers because of prior criminal activities." *People v. Blakely*, 50 Ill. App. 536, 543-44 (1977). The trial court sustained defense counsel's objection to the improper questions, but the appellate court reversed the defendant's conviction as sustaining the objections did not eliminate the prejudicial effect. *Blakely*, at 544. Ultimately, the court found that *Blakely* "was not a case in which the evidence against the defendant was so overwhelming as to render any errors clearly non-prejudicial." *Id*.

¶ 53    In *Nichols*, defendant was convicted of murder and attempted murder. *People v. Nichols*, 235 Ill. App. 3d 499 (1992). On appeal he argued that the trial court erred in denying his motion in *limine* to exclude reference to the fact that he was arrested for the charges at issue upon exiting a courtroom after attendance for charges unrelated to the case then at bar. *Nichols*, Ill. App. 3d at 511. The defendant averred that this was an attempt to introduce inadmissible "other crimes evidence. *Id*. The court in *Nichols* noted that "Illinois courts have denounced evidence which, without independent relevance, implies that defendant was well-known by police because of frequent presence both at headquarters and in court." *Id*. However, the court found that the defendant's argument was of no merit as "[d]efendant's mere presence in a courthouse on one

occasion does not require an inference of criminal activity on his part." *Id*. at 512. Additionally, the court ultimately noted that the evidence against defendant was "overwhelming". *Id*. at 513.

¶ 54      The evidence against defendant in the present appeal is not closely balanced. The jury heard Stevens testify that he observed defendant driving a gold Buick with Illinois license plates Q177042. He described the dangerous, high-speed pursuit through the Rockford streets following defendant's flight. Celia Martinez testified that she was struck in her car by a gold Buick with Illinois license plates Q177042. After hitting her, the driver of that gold Buick left the scene. Martinez stated that she followed the car whereupon she heard what she thought to be a gunshot, followed by seeing the gold Buick's back passenger window shattered and glass on the pavement. Officer Jones, despite his improper testimony as to prior dealings with defendant, testified that he discovered the gold Buick with Illinois license plates Q177042 at the Trevor Circle residence with its back passenger window shattered and a .40 caliber shell casing on the back floor. Officer Berke collected a .40 caliber Hi-Point model JCP semiautomatic firearm from the Kennon Road residence where defendant was present when arrested. The shell casing from the gold Buick was fired from the same gun as the one discovered at the Kennon Road residence. All this evidence was unrebutted.

¶ 55      Having established the jury's conclusion that defendant was the driver of the gold Buick based on Stevens' identification testimony was reasonable and sufficient to affirm his conviction, we find Jones' improper answer to the State's question in violation of the motion in *limine* was not prejudicial in light of the overwhelmingly circumstantial evidence of defendant's guilt. It does not appear to this court, based on the evidence presented, that the jury's guilty finding was the result of the improper testimony. Therefore, the trial court did not abuse its discretion in denying defendant's motion for mistrial.

¶ 56     We now move on to defendant's next contention that the trial court failed to properly admonish four of the jurors under Rule 431(b), thus denying him a fair trial. Defendant argues that the trial court's failure to comply with Rule 431(b) failed to ensure the selection of an impartial jury, although he concedes that he failed to preserve this issue for appellate review.

¶ 57     Defendant avers that this court may reach this otherwise forfeited contention under the plain error doctrine. See Ill. S. Ct. R. 615(a). Plain error occurs where the defendant shows a clear or obvious error, and that either (1) the evidence is closely balanced, or (2) the error is of such magnitude that the defendant is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Johnson,* 208 Ill. 2d 53, 64 (2003). Defendant argues that first-prong plain error occurred when the trial court failed to properly admonish four jurors under Rule 431(b).

¶ 58     In *People v. Zehr*, 103 Ill. 2d 472, 477 (1984), our supreme court held that "essential to the qualification of jurors in a criminal case is that they know" that the defendant: (1) is presumed innocent; (2) is not required to offer any evidence on his own behalf; (3) must be proved guilty beyond a reasonable doubt; and (4) may decide not to testify on his own behalf and that cannot be held against him. It follows that this qualification must come at the outset of trial because if a juror has a bias against any of these basic guarantees, an instruction given at the end of the trial will have little effect.

¶ 59     In light of *Zehr*, Illinois Supreme Court Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant

is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects. The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 60    It is well settled that a trial court errs when it fails to ask prospective jurors whether they both understand and accept the principles set forth in Rule 431(b). *People v. Belknap*, 2014 IL 117094, ¶ 46. Furthermore, the failure to ask the jury whether it understands the principles of Rule 431(b), by itself, constitutes error. *Id.* The record here clearly indicates that the trial court did not comply with Rule 431(b) in its *voir dire* exchange with Juror Doherty. See *supra* ¶ 12.  Therefore, we must consider whether the trial court's error prejudiced defendant under first-prong plain error. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 61    We agree with defendant that the trial court erred when it failed to ask Juror Doherty whether he both understood and accepted the principles set forth in Rule 431(b). However, for the reasons discussed above, the evidence in this case was not closely balanced. See *supra* ¶ 55-56. We will not belabor the point in recounting the evidence presented against defendant again here. Therefore, although defendant has shown the trial court's clear and obvious error, he cannot show that first-prong plain error occurred based on the overwhelming evidence of his guilt.

¶ 62    We now reach defendant's final contention in this appeal. He contends that he is entitled to a new sentencing hearing based on the trial court's admitted consideration of uncharged criminal conduct in aggravation. He argues that without prosecution, conviction, or even the presentation

of reliable underlying evidence of his involvement with the shooting at Cherry Vale Mall on October 8, 2016, it was an improper factor for the trial court to consider at sentencing.

¶ 63    A sentencing court may consider evidence of criminal conduct for which there was no prosecution or conviction, if such evidence is both relevant and reliable. *People v. Gomez*, 247 Ill. App. 3d 68, 73-74 (1993). When no supporting evidence is provided to establish its reliability, the consideration of such criminal conduct constitutes prejudicial error and the sentence will be vacated unless the record demonstrates that the weight placed on the improper factor by the court was insignificant. *People v. Gomez*, 247 Ill. App. 3d at 74; citing *People v. Bourke*, 96 Ill.2d 327, 332-33 (1983).

¶ 64    A trial judge may sentence a defendant convicted of aggravated discharge of a firearm, a Class 1 felony, to a term of imprisonment ranging between four and 15 years. 730 ILCS 5/5-4.5-30(a) (West 2016). The length of a sentence is a matter largely within the discretion of the trial judge. *People v. Illgen*, 145 Ill. 2d 353, 379 (1991). The trial court's determination will not be disturbed absent a showing of abuse of discretion or unless the trial judge relied on improper factors in imposing the sentence. *People v. Morgan*, 306 Ill. App. 3d 616, 633 (1999).

¶ 65    At the time defendant was sentenced in the present case, he had not been arrested for, or charged with any crime related to the shooting at the Cherry Vale Mall on October 8, 2016.[1] However, the PSI describing the facts of the present offense, contained the following recitation of events:

    "On October 8, 2016, at approximately 3:20 p.m., Rockford City Police Department Sgt.
    Joseph Stevens was made aware that a shooting was reported at Cherry Vale Mall, and that

---

[1] Defendant was charged in relation to the Cherry Vale Mall shooting on November 20, 2018.

an unknown black male was the shooter, and was in a gold Buick with registration of Q177402 ***."

The above statement of facts regarding the Cherry Vale Mall shooting in the PSI was received by the presentence investigator from the Winnebago County State's Attorney's Office.

¶ 66 The uncharged criminal conduct was certainly a factor in defendant's sentence as the trial court said that it made the "reasonable inference that defendant may have been involved" in the Cherry Vale Mall shooting earlier in the day on October 8, 2016. The trial court's reliance on this improper sentencing factor in aggravation was in error.

¶ 67 On the issue of properly admitted evidence of other crimes during a sentencing hearing, our supreme court has held that evidence of the other crimes presented through the testimony of a witness with first-hand knowledge, subject to cross-examination by the defendant, is relevant to a determination of a proper sentence. *People v. Ramirez*, 98 Ill. 2d 439, 461 (1983). Evidence of conduct that does not result in a conviction "should be presented by witnesses, who can be confronted and cross-examined, rather than by hearsay allegations in the [PSI], so that defendant has an opportunity to rebut the testimony." *People v. English*, 353 Ill. App. 3d 337, 339 (2004).

¶ 68 There was no evidence introduced at defendant's sentencing hearing by any live witnesses that defendant was involved with the shooting at Cherry Vale Mall. The trial court merely accepted statements contained in the PSI, made by the Winnebago County State's Attorney's Office. Defendant had no opportunity to rebut the statements or cross-examine any witnesses with first-hand knowledge of his involvement in this then-uncharged criminal conduct. Therefore, based on the foregoing precedent and the trial court's admission on the record that it relied on an improper sentencing factor in aggravation, this cause must be remanded for resentencing.

¶ 69                                              III. CONCLUSION

¶ 70    For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed, in part, and remanded for sentencing proceedings consistent with this order.

¶ 71    Affirmed in part, remanded in part.